**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MTGLQ INVESTORS, L.P.** | § | |
| | § | |
| **v.** | § | **A-19-CV-0992 RP** |
| | § | |
| **JERRY K. WALDEN, JR. AND** | § | |
| **TAMATHA WALDEN** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants Jerry K. Walden, Jr. and Tamatha Walden's Motion to

Dismiss (Dkt. No. 7); Plaintiff MTGLQ Investors, L.P.'s Motion for Summary Judgment (Dkt. No.

12); and the related response and reply briefs.  The District Court referred these Motions to the

undersigned for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of

Appendix C of the Local Rules.

## I.  FACTUAL BACKGROUND

This is a foreclosure case.  Plaintiff MTGLQ Investors, LP, brings this case against Jerry K.

Walden, Jr. and Tamatha Walden seeking to foreclose on their property located in San Marcos,

Texas (the "Property").  Dkt. No. 1.  The Waldens purchased the Property by warranty deed with

vender's lien in 2004.  *Id*. at ¶ 9.  Concurrently, the Waldens obtained a mortgage loan in the amount

of $220,000, with Milestone Mortgage Corporation as the lender.  *Id.* at ¶ 10.  In 2007, the Waldens

took out a Texas Home Equity loan on the Property as a second lien in the amount of $58,425, with

Wells Fargo, NA as the payee.  *Id.* at ¶ 11.  In 2008, the Waldens executed a Texas Home Equity

Note ("Note") and Security Instrument ("Security Instrument") in the amount of $316,800, payable

to Nationstar Mortgage, LLC (collectively the "Loan Agreement").  *Id.* at ¶¶ 12-13.  On May 8,

2008, the Waldens used the proceeds from the Loan Agreement to pay off the previous Milestone and Wells Fargo loans, thereby releasing those liens. *Id.* at ¶ 14.

MTGLQ is the successor in interest to the Loan Agreement. *Id.* at ¶ 17. In 2008, Nationstar assigned its interest in the Loan Agreement to Federal National Mortgage Association (FNMA). *Id.* at ¶ 15. Nationstar continued servicing the loan for FNMA until FNMA assigned its interest in the Loan Agreement to MTGLQ in May of 2017. *Id.* at ¶¶ 15-16. Selene Finance LP services the Loan Agreement on behalf of MTGLQ. *Id.* at ¶ 16.

The Waldens have been in default on the Loan Agreement since July 15, 2011. *Id.* at ¶ 20. Nationstar, still the servicer at that time, first sent Notice of Default to the Waldens on November 28, 2011. *Id.* at ¶ 21. On January 17, 2012, Nationstar sent the Waldens a Notice of Acceleration. *Id.* at ¶ 22. After abandoning the first acceleration and pursuing loss mitigation negotiations with the Waldens, Nationstar sent its Second Notice of Acceleration on July 18, 2012. *Id.* at ¶¶ 23-24. Thereafter, on September 6, 2012, Nationstar filed an Application for Expedited Order Allowing Foreclosure under TEX. R. CIV. P. 736, in the 274th District Court in Hays County, Texas ("State Action"). *Id.* at ¶ 25. Subsequently the Waldens and Nationstar re-engaged in loss mitigation discussions, with Nationstar mailing the Waldens offers to modify the Loan Agreement on October 8, 2015 and January 8, 2016. *Id.* at ¶ 26. On June 30, 2016, Nationstar mailed the Waldens a formal Notice of Rescission of Maturity of Indebtedness. *Id.* at ¶ 27. On August 3, 2016, in response to the Waldens' request, Nationstar sent them a Uniform Borrower Assistance Form to help determine what loss mitigation program might be available to them. *Id.* at ¶ 28.

The Waldens filed their answer to the State Action on March 19, 2017, alleging various violations of the Texas Constitution in the origination of the Loan Agreement. *Id.* at ¶ 29. On May 18, 2017, Nationstar responded denying the Waldens' allegations but alternatively offering to modify

the Loan Agreement to cure any alleged defects.  *Id.*  Nationstar enclosed a check for $1,000 as the payment required by Section 50(a)(6)(Q)(x)(f).  *Id.*  The Waldens accepted the check, but did not pursue further any modification of the Loan Agreement.  *Id.*  In May of 2017, MTGLQ was assigned the interest in the Loan Agreement and Selene replaced Nationstar as the servicer.  *Id.* at ¶ 16.

On October 4, 2017, after no loss mitigation agreement was reached, Selene sent the Waldens a Notice of Default and Intent to Accelerate.  *Id.* at ¶ 30.  On January 30, 2018, after the Waldens failed to bring the Loan current, counsel for MTGLQ and Selene sent the Waldens a Notice of Acceleration.  *Id.* at ¶ 31.  In February 2018, MTGLQ appeared in the State Action, amending its pleadings to change the relief sought from a Rule 736 Foreclosure Order to a traditional foreclosure claim.  *Id.* at ¶ 32.  As of the parties' last filings, the State Action remains pending, filed under Rule 736.  *See* Dkt. Nos. 12, 17, 21.

On October 11, 2019, MTGLQ filed this federal lawsuit and accelerated all payments due on the Loan.  Dkt. No. 1.  As of January 15, 2020, the amount owed under the Loan Agreement was $472,435.98.  MTGLQ seeks an order for non-judicial foreclosure pursuant to the terms of the Loan Agreement.  Dkt. No. 1 at ¶¶ 36-39.  Alternatively, MTGLQ seeks a judgment for judicial foreclosure and an order of sale.  *Id.* at ¶¶ 40-44.  In the alternative to foreclosure, through the doctrine of equitable subrogation MTGLQ seeks to rescind the vender's lien in the warranty deed by which the Waldens obtained the Property.  *Id.* at ¶¶ 45-47.  MTGLQ also seeks an award of attorney's fees.  *Id.* at ¶ 49.

On November 12, 2019, the Waldens moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or alternatively under the doctrine of abstention.  Dkt. No. 7. MTGLQ subsequently filed its Motion for Summary Judgment on January 30, 2020.  Dkt. No. 12. The Court considers the Waldens' Motion to Dismiss first.

## II.  THE WALDENS' MOTION TO DISMISS

### A.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(1).  Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts.  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted.  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).  The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows

4

the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."  *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

In certain "extraordinary and narrow circumstances," a federal district court may decline to exercise its jurisdiction because of parallel state court litigation.  *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737-38 (5th Cir. 1999) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818-819 (1976).  Courts considering abstention must evaluate whether "(1) there is a parallel proceeding pending in state court and (2) 'exceptional circumstances' warrant abstention."  *Bates v. Laminack*, 938 F. Supp. 2d 649, 662 (S.D. Tex. 2013).  Parallel proceedings are actions "involving the same parties and the same issues."  *RepublicBank Dallas Nat. Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987).  The party seeking dismissal of the federal case on account of a concurrent state case bears the burden of establishing that abstention is proper under

the *Colorado River* doctrine. *Turner v. Pavlicek*, 2011 WL 4458757, at \*4 (S.D. Tex. Sept. 22, 2011).

**B.     Analysis**

The Waldens argue that MTGLQ's Complaint should be dismissed on three grounds: (1) that a pending state action warrants the Court to exercise abstention; (2) that under Rule 12(b)(1), the Court lacks jurisdiction to grant the relief sought by MTGLQ; and (3) for the same reasons, MTGLQ's claims should be dismissed under Rule 12(b)(6). The Court considers the Waldens' challenges to its jurisdiction first.

**1.     Jurisdiction**

The Waldens' motion to dismiss challenges the Court's jurisdiction under Rules 12(b)(1) and 12(b)(6).[1] MTGLQ's Complaint asserts the Court has jurisdiction over this matter on the basis of diversity because (1) MTGLQ is a citizen of Delaware, (2) the Waldens are citizens of Texas, and (3) the amount in controversy exceeds the threshold amount of $75,000 because the Loan on the Property is worth more than $426,000. Dkt. No. 1 at ¶¶ 1-7. Because there is complete diversity and the amount in controversy exceeds $75,000, the Court concludes it has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a).

The Waldens' motion does not attack any of these jurisdictional facts. Rather, the Waldens assert that this Court lacks jurisdiction because it has no authority to grant a judicial foreclosure or writ of possession under Texas Rules of Civil Procedure 309 and 310. Dkt. No. 7 at ¶¶ 39-53. This argument is unfounded. It is well-established that under its diversity jurisdiction a federal court may apply Texas law and adjudicate claims for judicial foreclosure or non-judicial foreclosure. *See, e.g.,*

---

[1] The Waldens advance the same arguments regarding this Court's lack of jurisdiction for its Rule 12(b)(1) and Rule 12(b)(6) motions.

6

*Maldonado v. CitiMortgage, Inc*., 676 F. App'x 282, 284 (5th Cir. 2017) (affirming judgment for

judicial foreclosure); *Huston v. U.S. Bank Nat. Ass'n,* 583 Fed.App'x. 306 (5th Cir. 2014) (same);

*Wilmington Tr., Nat. Ass'n v. Rob*, 2015 WL 7076637, at *5 (W.D. Tex. Nov. 12, 2015) (denying

motion to dismiss plaintiff's equitable subrogation claim).  Accordingly, the Waldens' challenges

to this Court's jurisdiction under Rule 12(b)(1) and Rule 12(b)(6) are without merit.

> **2.      Abstention**

The Waldens also argue that the Court should abstain under the *Colorado River* doctrine

because of a pending state action in which MTGLQ is the petitioner and the Waldens are the

respondents.  As discussed above, in evaluating a request for abstention, a court "must be satisfied

that (1) there is a parallel proceeding pending in state court and (2) 'exceptional circumstances'

warrant abstention." *Bates v. Laminack*, 2013 WL 1345193, at *11 (S.D. Tex. Apr. 1, 2013).  The

Waldens argue that MTGLQ improperly filed this case while simultaneously maintaining the State

Action in which MTGLQ is a petitioner and the Waldens are respondents, and thus abstention is

appropriate. Dkt. No. 7 at ¶¶ 27-38.

The State Action the Waldens rely on as a parallel proceeding, however, is a Rule 736

Application.  *See* Dkt. No. 7-1.  The Fifth Circuit has made clear that Rule 736 is "not a substitute

for a judgment for judicial foreclosure." *Meachum v. Bank of New York Mellon Tr. Co.*, 636 F.

App'x 210, 213 (5th Cir. 2016) (citing TEX. R. CIV. P. 735.3).  Rather, a proceeding under Rule 736

is "merely . . . a procedural device to obtain authorization to proceed with the remedy of

foreclosure," and "is without prejudice and has no res judicata, collateral estoppel, estoppel by

judgment, or other effect in any other judicial proceeding."  *Id.* (citing TEX. R. CIV. P. 736.9).  *See*

*also Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 387 (5th Cir. 2017) (holding that

"Texas state law explicitly provides that the Foreclosure Order has no preclusive or res judicata

effect" and that "Texas law specifically allows for collateral attacks on Rule 736 foreclosure orders in 'a court of competent jurisdiction'"); *Reyna v. Deutsche Bank Nat. Tr. Co.*, 892 F. Supp. 2d 829, 832 (W.D. Tex. 2012).  Accordingly, any determination by the Hays County District Court regarding the Rule 736 action has no preclusive or res judicata effect on this Court's jurisdiction to consider similar or identical claims, and thus cannot be construed as a parallel proceeding for the purposes of *Colorado River* abstention.  Absent a pending parallel proceeding between the parties, the Waldens' abstention argument fails.  *See Bates*, 2013 WL 1345193, at *11 (denying the plaintiff's motion to abstain; explaining in part that "[w]ithout a pending parallel proceeding" between the parties, "the first requirement for *Colorado River* abstention [was] absent"). Thus, the Waldens' motion to dismiss based on abstention should also be denied.

Because none of the Waldens' arguments for dismissal under Rule 12(b)(1), Rule 12(b)(6), or abstention have merit, the undersigned recommends that the District Court deny the Waldens' Motion to Dismiss (Dkt. No. 7).

### III. MOTION FOR SUMMARY JUDGMENT

#### A.    Rule 56 Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Anderson*, 477 U.S. at 248.

## B.    Analysis

On January 30, 2020, MTGLQ filed its Motion for Summary Judgment, seeking a judgment authorizing it to foreclose on the Property.  Dkt. No. 12.  On March 6, 2020, the Waldens filed a response in opposition of MTGLQ's motion, asking the Court to deny the motion, or alternatively, requesting that the Court defer determination of the motion to allow for further discovery.  Dkt. No. 17.  MTGLQ filed a reply on March 20, 2020.  Dkt. No. 21.  In support of its motion, MTGLQ submits a number of exhibits, including copies of the Loan Agreement and associated documents; the assignment of the Note and Deed; the Notices of Default and Intent to Accelerate; Notices of Acceleration; records of the parties' litigation in Hays County District Court; copies of correspondence between the parties; and an affidavit that summarizes and authenticates all other materials by Connie Hawkins, a Contested Foreclosure Specialist for the loan servicer, Selene Finance, LP.  *See* Dkt. No. 13.  To their Response, counsel for the Waldens attaches a short declaration attesting under penalties of perjury that the facts contained in the response are true and correct. Dkt No. 17 at 7.  Other than the attorney's declaration, there is no evidence submitted with the response.

9

1.      **MTGLQ's Foreclosure Claim**

In Texas, to foreclose under a security instrument with a power of sale, the party seeking

foreclosure must show that: (1) a debt exists; (2) the debt is secured by a lien created under Texas

law; (3) the borrower is in default; and (4) the borrower has been properly served with notice of

default and acceleration. *Huston v. U.S. Bank Nat. Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex.

2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014) (citing TEX. PROP. CODE § 51.002).

MTGLQ has introduced evidence establishing that a debt exists and is secured by a valid lien

under Texas law.  Specifically, the record shows that on April 10, 2008, the Waldens executed a

Texas Home Equity Note in the principal amount of $316,800 payable to Nationstar Mortgage LLC

as the lender.  Dkt. No. 13-1 at 55-61.  The Waldens also executed a Texas Home Equity Security

Instrument securing payment of the Note with a lien on the Property.  Dkt. No.  13-1 at 62-81.  The

Security Instrument is filed in the Official Public Records of Hays County, Texas under Document

No. 80010245.  On April 16, 2008, Nationstar assigned its interest in the Security Instrument to

FNMA.  Dkt. No. 13-1 at 88.  On May 7, 2017, the Security Instrument was assigned to MTGLQ

and the assignment was filed in the Official Public Records of Hays County, Texas under Document

No. 17016828.  Dkt. No. 13-1 at 92.

Under the terms of the Note and Security Instrument, the Waldens were required to pay when

due the principal and interest on the debt, as well as any applicable charges and fees due.  Dkt. No.

13-1 at 55-81.  The Waldens do not dispute that they have not made payments when due.  Dkt. No.

16 at ¶ 20.  It is therefore undisputed that the Waldens are in default.  MTGLQ has also established

that the Waldens were provided with notice of default, acceleration, and foreclosure in accordance

with Texas statutory requirements.  Dkt. No. 13-1 at 214-220; 224-225; *see also* TEX. PROP. CODE

§ 51.002(b).  Moreover, the Waldens do not dispute that they received these notice letters.  Dkt. No.

17 at ¶ 44.  Accordingly, MTGLQ has satisfied its summary judgment burden with regard to each element of its claim for foreclosure. Because MTGLQ has produced sufficient evidence to satisfy its summary judgment burden, the burden shifts to the Waldens to "set forth specific facts showing that there is a genuine issue for trial," not just to "rest upon the mere allegations or denials of the adverse party's pleading." *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (citing *Resolution Trust Corp. v. Camp*, 965 F.2d 25, 29 (5th Cir. 1992).

        **2.**      **The Waldens' Opposition**

The Waldens do not dispute the existence of the debt, the default, the lien, or that service has been properly made. *See* Dkt. No. 16 at ¶¶ 8-34.  However, the Waldens contend that MTGLQ is not entitled to summary judgment on its foreclosure claim because of a number of alleged issues of material fact. Dkt. No. 17.  Specifically, in their Response to MTGLQ's motion the Waldens assert that fact questions remain as to: (a) whether the assignments of the mortgage were manufactured for purposes of litigation and thus whether MTGLQ has standing to foreclose; (b) whether there are defects in the origination of the Loan Agreement in violation of the Texas Constitution; (c) whether MTGLQ abandoned its prior acceleration for the purpose of tolling the statute of limitations; (d) whether all conditions precedent have been met; and (e) for the purposes of MTGLQ's alternative equitable subrogation claim, whether MTGLQ paid property taxes on the Property and whether MTGLQ is entitled to such relief.  Dkt. No. 17 at ¶ 14.  As noted, the Waldens submit no evidence.

As to the Waldens' allegations that the documents were fraudulently manufactured for the purpose of litigation or that there are defects in the origination of the Loan, the Waldens provide no facts or evidence to support this position.  *See generally* Dkt. No. 17.  The court need not accept "speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

banc).   A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986); *see also Wells Fargo Bank Nat'l Ass'n as Trustee v. Pitre*, 772 Fed. App'x. 135 (5th Cir. 2019) (finding no fact issue raised based on unsupported allegations that an endorsement was fraudulent). The Waldens have provided no facts or evidence to undermine MTGLQ's evidence and their allegations of fraudulent documents or defects in the origination of the Loan Agreement are unsupported factually and legally.  *See* Dkt. No. 17.

The Waldens' statute of limitations argument also fails.  In Texas, the limitations period to enforce a real property lien is four years.  *Boren v. U.S. Nat'l Bank Ass'n,* 807 F.3d 99, 104 (5th Cir. 2015).  "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment."  TEX. CIV. PRAC. & REM. CODE § 16.035(e).  However, if the deed of trust contains an optional acceleration clause, the limitations period does not begin until the holder actually exercises its option to accelerate.  *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).  "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. Both notices must be clear and unequivocal."  *Id.*

A noteholder may abandon acceleration "either by the lender's unilateral actions or by agreement, thereby suspending the limitations period until the lender exercises its option to re-accelerate the note."  *Jatera Corp. v. US Bank Nat'l Ass'n as Tr. for Registered Holders of Citigroup Mortg. Loan Tr.*, 917 F.3d 831, 835 (5th Cir. 2019).  For example, a noteholder may abandon acceleration by sending the borrower a notice demanding an amount less than the full amount due. *See Boren*, 807 F.3d 99, 106 (5th Cir. 2015).  A lender's loss mitigation attempts on the loan are also an effective method of abandoning acceleration.  *See Guzman v. Bank of N.Y.*

*Mellon*, 2018 U.S. Dist. LEXIS 228929, \*10 (W.D. Tex. Feb. 23, 2018).   If a lender abandons acceleration, the statute of limitations period under § 16.035(a) ceases to run and a new limitations period does not begin to accrue until the mortgagor defaults again and the lender exercises its right to accelerate a second time.   *See Boren*, 807 F.3d at 106.

The Waldens contend that there is a dispute of fact as to whether MTGLQ properly abandoned its prior acceleration, and thus whether the instant suit was filed within statute of limitations.   Dkt. No. 17 at ¶ 14.   They point to the State Action (the Rule 736 proceeding) as evidence that facts pertaining to MTGLQ's abandonment are disputed.   *Id.*   The Fifth Circuit, however, has "previously considered and rejected a borrower's argument that a Rule 736 proceeding precludes a lender from manifesting an intent to abandon an earlier acceleration by requesting payment on less than the full amount of the loan."   *Ocwen Loan Servicing, LLC v. REOAM, LLC*, 755 F. App'x 354, 359 (5th Cir. 2018).   Thus to the extent the Waldens argue the Rule 736 proceeding prevented MTGLQ from abandoning prior accelerations, this argument fails.

MTGLQ's uncontroverted evidence shows that the statute of limitations has not run in this action because MTGLQ and its predecessor repeatedly abandoned acceleration.   Nationstar first sent notice of acceleration on January 17, 2012, (Dkt. No. 13-1 at 124) and a second time on July 18, 2012 (Dkt. No. 13-1 at 127).   Thereafter, Nationstar initiated the Rule 736 State Action on September 6, 2012.   Dkt. 13-1 at 240.   Subsequently Nationstar abandoned the prior accelerations by entering loss mitigation efforts with the Waldens and mailing them offers to modify the Loan Agreement on October 8, 2015 and January 8, 2016.   Dkt. No 13-1 at 173, 178.   On June 30, 2016, Nationstar mailed the Waldens a formal Letter of Rescission of Acceleration of Maturity of Indebtedness.   Dkt. No. 13-1 at 183.   On August 3, 2016, Nationstar mailed the Waldens a Uniform Borrower Assistance Form to help determine what loss mitigation program might be available to

13

them. Dkt. No. 13-1 at 187.  After no loss mitigation agreements were made, on October 4, 2017, Selene sent the Waldens a Notice of Default and Intent to Accelerate on behalf of MTGLQ.  Dkt. No. 13-1 at 210.  Finally, on January 30, 2018, MTGLQ sent the Waldens a Notice of Acceleration. Dkt. No. 13-1 at 220.  The Waldens do not dispute that they received this Notice.  Dkt. No. 16 at ¶ 44.  The statute of limitations therefore began to run no later than January 30, 2018.

The Waldens offer no evidence to dispute this history of acceleration and abandonment. Based on this uncontroverted evidence, at no time have four years elapsed between the date of acceleration and the date of abandonment.  The Court therefore concludes that no reasonable jury could find that the four-year statute of limitations had expired when MTGLQ filed this action on October 11, 2019.  In sum, the Waldens fail to present any issues of material fact to prevent entry of summary judgment on MTGLQ's foreclosure claim.[2]

### 3.      The Waldens' Request for Further Discovery

As noted, in the alternative to their opposition to the motion, the Waldens request that the Curt defer determination of the motion to allow them to conduct further discovery.  *See* Dkt. No. 17 at 5.  Rule 56(d) governs requests to stay a motion for summary judgment to allow for further discovery.  Under the rule, a party seeking such relief must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). To warrant relief under the rule, a party must present "specific facts explaining inability to make substantive response required by Rule 56."  *SEC v. Spense & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980).  A party "may not simply rely on vague assertions that discovery will produce

---

[2] The Waldens also raise issues with regard to MTGLQ's alternative equitable subrogation claim.  *See* Dkt. No. 17 at 4.  Since the Court finds that MTGLQ has met its burden and is entitled to summary judgment on its foreclosure claim, it is not necessary to discuss the applicability of MTGLQ's alternative claim for equitable subrogation.

needed, but unspecified, facts." *Id.* While the Waldens' Response points to the fact that minimal discovery had taken place as of MTGLQ's filing of the Motion for Summary Judgment, its request to defer determination of the motion comes nowhere near fulfilling the requirements under Rule 56(d). The Waldens do not explain what evidence they are lacking or expect to obtain through further discovery, nor do they make any specific proposals of the type of discovery sought. Accordingly, the Waldens are not entitled to a continuance for further discovery and MTGLQ's motion is ripe for determination.

### C.    Conclusion

Based on the foregoing, MTGLQ has shown that the Waldens owe MTGLQ a debt, the debt is secured by a lien created under Texas law, the Waldens are in default, and the Waldens have been properly served with notice of default and acceleration. The Waldens have not shown any genuine issue of fact for trial. The Court concludes that MTGLQ is entitled to enforce the Loan Agreement by foreclosure and recommends that the District Court grant its Motion for Summary Judgment.

## IV.  RECOMMENDATIONS

The Court **RECOMMENDS** that the District Court **DENY** the Waldens' Motion to Dismiss (Dkt. No. 7). The Court **RECOMMENDS** that MTGLQ's Motion for Summary Judgment (Dkt. No. 12) be **GRANTED** and that the District Court **ENTER** an order authorizing foreclosure of the Property as detailed in MTGLQ's proposed order (Dkt. No. 12-1). Lastly, it is **ORDERED** that this case be **RETURNED** to the docket of the Honorable Robert Pitman.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See*

*Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 14th day of August, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE